John H. Brewster, Plaintiff in Error, *vs.* William Leith, Defendant in Error.

C. & A. were indebted to various persons. Their personal property had been attached for their debts. B., one of the creditors, obtained a transfer of the property to him in trust for the payment of himself and other creditors. He also procured releases from the plaintiffs in the several suits in attachment. *Held*, that B. having taken the property to market and sold it for cash funds, was liable for the indebtedness of C. & A., at the suit of one of the attaching creditors.

Forbearance to use legal means, by one party to secure himself, at the request of another, and consequent loss, is sufficient consideration to support a contract.

Taking a party in the sight of a raft of logs and declaring them to be his property, and marking them at his instance, held to be sufficient delivery.

R. R. Nelson, for Plaintiff in Error.

Rice, Hollinshead & Becker. for Defendant in Error.

*By the Court.*—MEEKER, J.  This was an action of assumpsit brought by Leith against Brewster, before Horace K. McKinstry, Esq., a Justice of the Peace in and for the county of Washington.  Process was issued on the 26th of November, 1850, and made returnable on the 2nd of December following, when the parties appeared, and the plaintiff, by his attorney, filed his declaration, to which the defendant pleaded the general issue.

It appears in evidence, that an article of agreement, or deed of assignment, was executed by Cummings & Arnold, partners in business, who were in debt to John H. Brewster, William Leith, and others named therein, in certain sums of money. The article stipulates that they owe $80 49 to Leith, and purports to transfer to Brewster, "251,000 feet of pine saw logs, now lying and being in the River St. Croix, a short distance above Lake St. Croix, and being the same logs heretofore attached by Jesse Taylor, Esq., Sheriff, and William C. Penny, Deputy Sheriff, at the suits of the above named parties, estimated and valued at four dollars per thousand feet, log measure," in trust for Brewster, Leith, and the other creditors therein mentioned.  Brewster was to sell the logs, and to pay the debt specified.  No date is affixed to the agreement, but it is disclosed in evidence, that the transaction took place in the summer previous to the institution of this suit—perhaps in June, the date when the value of the logs was estimated.  It further appears that Brewster was present at the time of the agreement, and the draftsman says he delivered it to him. There is also evidence showing that Leith, previous to this, had commenced a suit for his demand on Cummings & Arnold, and the writ placed in the hands of the Sheriff to seize the logs in question, and whilst he was proceeding to execute the same, he was informed by the counsel of the parties, that the matter had been adjusted.

In pursuance of the arrangement above alluded to, it sufficietly appears, that Brewster proceeded to take control of the logs by a formal delivery of the attaching creditors of the firm, or at least some of them, stating in reference to the plaintiff's interest therein, that he had bought it.

It was also proved that Brewster paid or settled, by giving

his note therefor, the costs of the suit of Leith against Cummings & Arnold. The logs were taken to St. Louis and sold for paper which was converted into cash whilst Brewster was there. It does not appear that he took them down, or that he superintended the sale. He had returned when this suit was brought, as appears from the process served upon him, and as shown by the testimony of Ames, was to pay the men after he had sold the logs at St. Louis, and returned with the money.

This, we think, is a correct embodiment and analysis of the evidence, to portions of which various exception were taken, during the progress of the cause before the Justice; but, as there appear to be no material errors in his rulings, we do not deem it necessary to make any further comment upon them.

Upon this evidence, the Justice gave a judgment for the plaintiff for $80 49, and costs of suit, to reverse which a *certiorari* was prosecuted, and the cause taken to the District Court of Washington County, where his judgment was affirmed; which judgment of affirmance it is now sought to reverse.

Passing by the many exceptions and errors complained of, we think there are but two points involved that deserve our consideration. The first is, has the plaintiff established a sufficient and legal assumpsit as against Brewster?

And secondly, if he has, had the right of action accrued when Leith commenced this suit? Ames, the draftsman, and attesting witness to the article above named, stated, in connection with the proof of its execution, that he understood from Brewster, that the latter was to pay the men as soon as he received the money for the sale of the logs and had returned with it. Daniel McLean deposed that the defendant informed him, as he was delivering the logs by marking them, that he, (Brewster,) had bought the logs of plaintiff; Cummings being there at the same time, consenting to the delivery.

Besides this, there is evidence strongly conducing to show that Brewster received the logs against which Leith had previously sued out a writ of attachment, and was to pay the demand the latter had against Cummings & Arnold, upon his releasing to the former the lien which he had, or was about to secure upon them.

If, to use the unprofessional language of a plain witness,

like McLean, in reference to Leith's interest in the logs which he had, or was about to acquire, Brewster had "purchased" it from Leith, or if there was a release to Brewster by Leith of a legal advantage—whether, in short, it was an absolute purchase, or a relinquishment of some right or property in them that Leith was obtaining by virtue of a suit then pending, we think the consideration sufficient, and the promise to pay the debt due to Leith well sustained.

Forbearance to use legal means by one party, to secure himself, at the request of another, and consequent loss, is sufficient consideration to support a contract. *See Lemaster vs. Burkhart*, 2 *Bibb*, 30.

Benefit to one, or trouble or prejudice to another, is a sufficient consideration. *See* 1 *Marshall*, 538. 4 *Munroe*, 532.

If then the promise is backed by a sufficient consideration, and Brewster legally undertook to pay the debt of Leith when it became due by the terms of the assumpsit, had Leith a right to sue by these terms when this action was brought?

There can be no doubt, we think, of the delivery of the logs to Brewster. McLean, one of the attaching creditors, named in the article, (although in no way interested in the event of this suit,) states that he, (McLean,) took possession of the logs by the direction of the Sheriff, and, from his evidence in the cause, we think it should be inferred that he delivered them in pursuance of the general arrangement spoken of, and he adds that Leith requested him to deliver his interest at the same time. He further states that Brewster obtained a boat and man and went upon the raft—that Cummings & Arnold delivered the raft to satisfy the debts of the men—and this, we think, McLean might be well informed of, as he is named in the assignment, and held a claim against the same firm. He states that he took an axe and marked the logs in each string when he so delivered them to Brewster—that Brewster received three strings as his property from Cummings, who was present and consenting at the same time. We cannot well conceive of a more perfect delivery of such heavy and ponderous property. Nor do we see any reason or propriety in exacting more than was here done to effect a transfer of such property. The logs were

taken to St. Louis and sold for paper, which was converted into money.

It does not explicitly appear that they were sold under his direction or by his orders, but it does appear that he was there at the time.

And, in the absence of all proof, as to what had become of the logs after they were delivered to him, we do not consider the most positive proof, on this head, at all necessary.

What excites a strong suspicion that the sale was under his control, is the credit endorsed on the back of the article and proven to be in his hand writing, though signed by Stinson, one of the attaching creditors named in the assignment. It is for the sum of $228 70, the full amount due him as appears in the deed. It is dated St. Louis, September 23d, 1850. Why pay that to Stinson, if Brewster did not receive the money for the logs? And is it reasonable to suppose he paid Stinson without securing his own claim? These are strong circumstances in favor of the recovery in this case, especially as they are not, nor are they attempted to be explained.

We think, from all the facts in the case, that Brewster's liability to pay Leith's demand was fixed, and that the suit was not prematurely brought.

The judgment of the District Court is therefore affirmed with costs.